OPINION OF THE COURT
Alfred J. Weiner, J.
By petition dated February 23, 1978, the Rockland County Department of Social Services commenced this proceeding *364 alleging that Hans Spiegelman, a child under the age of 18 years, has been permanently neglected by his parents, Jack Spiegelman and Ursula Spiegelman, the respondents herein.
The child had been placed in the care and custody of the Department of Social Services on March 30, 1976, after it was found that the respondents had neglected their child within the meaning of article 10 of the Family Court Act. Placement was subsequently extended by orders of this court, dated December 2, 1977 and March 30, 1978.
At the time of the original neglect proceeding, it was found that both of the respondents were suffering from serious mental illness. Mr. Spiegelman had been diagnosed as having a manic-depressive psychosis, and had, in the past, been hospitalized on three separate occasions for his mental disorders. Mrs. Spiegelman had been diagnosed as having a passive-aggressive personality with schizoid features. The court further found that the respondents refused to acknowledge that they were mentally ill, and would not seek appropriate treatment for themselves.
When the child was placed in the custody of the Department of Social Services, the court directed that Child Protective Services make available to the respondents intensive psychiatric care and treatment.
After placement, Child Protective Services recommended to the respondents that they establish a regular visitation schedule, attempt to obtain gainful employment, stabilize their home situation, and obtain the intensive psychiatric therapy which the agency would assist in making available to them.
The respondents have maintained regular visitation with some exceptions. In addition, they have stabilized their lives to some degree in that they have resided in one location since approximately July of 1977, and have obtained employment.
The respondents, however, have not sought or obtained necessary psychiatric treatment which has been made available to them. In July, 1976, Jack Spiegelman did visit a psychiatrist approximately three times. Subsequently, in approximately September, 1976, he voluntarily committed himself to Rockland Psychiatric Center as an inpatient for a period of 30 days. Approximately one year later, in September of 1977, he commenced making monthly visits to the Nyack Consultation Center of the Rockland Psychiatric Center until January of 1978. In January of 1978, he was involuntarily admitted to Rockland Psychiatric Center where he remained *365 until May of 1978. Since his discharge, he has again attended the Nyack Consultation Center once a month. Mrs. Ursula Spiegelman has received no psychiatric assistance or any other type of treatment for her mental illness except when she visited a psychiatrist on three separate occasions from December of 1977 through February of 1978.
In addition to the evidence presented concerning permanent neglect, the Law Guardian presented testimony intended to establish the existence of other extraordinary circumstances. Evidence introduced established that the child had made remarkable progress socially, emotionally, and intellectually since removal from the respondents’ custody. It was further proven that if the child was returned to the parents at this time, there could be a significant amount of regression by the child, and possibly the creation of severe emotional problems.
The facts established by the Law Guardian, while compelling are not sufficient to bring this proceeding within Matter of Kim Marie J., which held that even if permanent neglect cannot be proven, extraordinary circumstances may be present which permit termination of parental custody. (59 AD2d 716, app dsmd 43 NY2d 826.) A court may only intervene in custodial rights of natural parents when there exists "surrender, abandonment, unfitness, persistent neglect, unfortunate or involuntary extended disruption of custody, or other equivalent but rare extraordinary circumstances which would drastically affect the welfare of the child. ” (Matter of Bennett v Jeffreys, 40 NY2d 543, 549; emphasis supplied.)
However, had the Law Guardian or petitioner attempted to offer proof as to respondents’ present mental health and their inability to care for the child, the court could not have considered that as evidence of extraordinary circumstances under Kim Marie J. (supra) as the Legislature has statutorily defined a specific procedure for termination of parental rights based upon mental illness in section 384-b (subd 4, par [c]) of the Social Services Law. That provision allows the court to commit the guardianship and custody of a child to an authorized agency when the parents "are presently and for the foreseeable future unable, by reason of mental illness * * * to provide proper and adequate care for a child”.
As to the issue of permanent neglect, section 384-b (subd 7, par [c]) of the Social Services Law defines permanent neglect to include the failure "to take such steps as may be necessary to provide an adequate, stable home and parental *366 care for the child within a period of time which is reasonable under the financial circumstances available to the parent. * * * In determining whether a parent has planned for the future of the child, the court may consider the failure of the parent to utilize medical, psychiatric, psychological and other social and rehabilitative services and material resources made available to such parent.”
The court finds that the petitioner made diligent effort to encourage and strengthen the parental relationship. The court further finds that the respondents failed for a period of more than one year, following the date that such child came into the care and custody of the petitioner, to substantially and continuously and repeatedly plan for the future of the child, although physically and financially able to do so, in that the respondents failed to obtain the intensive psychiatric treatment necessary to treat their serious mental illnesses.
Accordingly, the court finds that the child, Hans Spiegelman, has been permanently neglected by the respondents.
The court directs that the Child Protective Service prepare an investigation and arrange for psychiatric evaluations of the respondents. The court further directs that the clerk of the court schedule this matter for a dispositional hearing.
Petition for extension of placement of this child, under Docket No. N-44-75, and dated February 28, 1978, is dismissed.